FILED

MAR - 6 2001

U. S. DISTRICT COURT
E. DIST. OF MO.
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSEPH LEE CHRONISTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:94CV2082 ERW |
| ) | |
| BRYCO ARMS d/b/a JENNINGS, ) | |
| FIREARMS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Defendant's Motion to Enforce Settlement. (Docket # 130). On February 2, 2001, the parties argued this motion in a hearing before the Court. (Docket # 134). Subsequently, the Defendant filed a supplemental memorandum in support of its motion. (Docket # 135). For the reasons listed below, the Court grants the Defendant's motion.

### A. BACKGROUND FACTS

This motion to enforce settlement stems from a 1994 civil action, in which Plaintiff Chronister sued Defendant, a firearms manufacturer, for injuries resulting from a July 24, 1994 firearms accident. On April 29, 1996, this case went to trial. On May 3, 1996, the Plaintiff obtained a judgment in the sum of $314,250. On August 26, 1996, the Defendant filed a notice of appeal. Throughout the summer months of 1997, the Plaintiff undertook a number of steps in an attempt to collect judgment. Plaintiff executed a levy against the Defendant's bank account, which resulted in the collection of the sum of $6,197.08. In addition, with the aid of the United States Marshal Service, the Plaintiff seized a large number of firearms manufactured by the Defendant, which were valued at approximately $350,000.



Subsequently, the parties entered into settlement negotiations. Before those negotiations had concluded, however, the Eighth Circuit Court of Appeals affirmed the jury verdict in this case on September 11, 1997. Shortly thereafter, the Defendant moved for a rehearing of its appeal. It appears that on October 6, 1997, the parties reached an agreement in principle to settle this case. This agreement is reflected in a letter dated October 6, 1997, mailed by Defendant's counsel to Plaintiff's counsel. (See Plaintiff's Exhibit B). That letter states, "This is to confirm our telephone conversations on Friday settling the above-referenced matter on the following terms." (Id.) That letter then lists those terms, which include: (1) payment of $ 225,000 by Defendant to Plaintiff, (2) an agreement by both parties to file a joint motion to the Eighth Circuit to vacate its September 11, 1997 opinion, in order to avoid any rehearing, (3) return of all firearms seized by the Plaintiff to the Defendant, and (4) a condition that "Defendants will deliver the certified check described above no later than 2 business weeks from this date." (Id.) Thus, under the terms of the settlement agreement, as referenced in this letter, payment of the settlement was due October 20, 1997. It is important to note that the $ 225,000 figure was to be adjusted to reflect the $6,197.08 in funds already seized by Plaintiff.

On October 8, 1997, Plaintiff's counsel sent a letter to counsel for the Defendant. This letter stated that an amount of $220,607.08 would be acceptable. (Defendant's Exhibit C). This sum reflected the $225,000 settlement agreement, with the addition of $1,139.94 for reimbursement for payments made by the Plaintiff to the United States Marshal's office and with $665.00 added for reimbursement for storage costs. This $ 220.607.08 figure also includes a $6,197.08 credit for the funds previously seized by the Plaintiff. On October 14, 1997, counsel for Defendant replied in a letter to Plaintiff's counsel. (Defendant's Exhibit D). This letter included a draft of a settlement

2

agreement, which reflected similar terms to Plaintiff's October 8th letter. However, this draft did not include a statement regarding when payment of the $220,607.86 was to become due. On October 15, 1997, Plaintiff's counsel, in turn, responded with his own draft of the settlement agreement. (Defendant's Exhibit E). This draft, reflecting a settlement amount of $ 220,607.86, is similar to previously exchanged correspondence. Likewise, this settlement draft does not stipulate when payment is to become due.

On October 16, 1997, Defendant's counsel sent another letter to Plaintiff's counsel (Defendant's Exhibit F), stating that "I confirm that your revised version of the Release and Confidentiality Agreement is acceptable." This letter also states, "I understand and anticipate that our clients will deliver the check in the agreed amount by Monday." The Monday date referenced by this letter would have been October 20, 1997. This letter further reflected that Plaintiff's counsel was to hold this sum of money in escrow until Plaintiff executed the agreement and forwarded the agreement to Plaintiff's counsel. (Defendant's Exhibit F). There is no evidence before the Court that any of these drafts were signed and executed by the parties.

On October 20, 1997, however, no payment was made by the Defendants. On October 21, 1997, the Plaintiff argues that counsel for both parties had a telephone conversation. During this conversation, counsel for Defendant "acknowledged that, due to the failure of payment at the specified time, the proposed settlement agreement was 'queered' but that Defendant was going to go ahead an make a payment as a good will gesture. (Plaintiff's Memorandum, p. 2). Plaintiff also states that during this conversation, Plaintiff's counsel "considered the deal to be off, that the Defendant had failed to comply with the material conditions of such settlement, i.e. payment by October 20, 1997, and that such breach by Defendant nullified any obligation on the part of the

3

Plaintiff." However, there is also evidence before the Court that Plaintiff's counsel made the suggestion that the Defendant should "continue to get their ducks in a row and try to get me the check by this weekend." (Transcript from Recorded Phone Conversation). Plaintiff's counsel also stated that if Plaintiff "could get the check for the full amount of the settlement by Friday [October 24, 1997], I'll be happy." (Id.)

On October 22, 1997, the Eight Circuit denied the Defendant's motion for a rehearing. Absent an appeal to the Supreme Court, this denial terminated any chances of reversal of the trial court's judgment. On October 24, 1997, the Defendants obtained and mailed a cashier's check in the amount of $ 220,607.86. While this cashier's check is dated October 24, 1997, the Plaintiff contends that he did not receive this check until October 27, 1997. This settlement check was not held in escrow, but instead cashed and deposited into Plaintiff's account. Plaintiff has never forwarded a signed copy of any agreement to Defendant's counsel. However, subsequent to the cashing of this check, Plaintiff returned the $350,000 worth of seized firearms to the Defendant.

Almost three years after accepting and cashing Defendant's cashier's check and releasing the levy on Defendant's property, the Plaintiff has initiated discovery procedures against Defendant. These discovery procedures are apparently an attempt to recover the remainder of the original judgment, i.e. the difference between the $ 314,250 judgment and the $ 220,607.86 settlement check. It is this initiation of discovery that has prompted the Defendants to file their present motion to enforce settlement.

## B. DISCUSSION

Defendant alleges that a settlement agreement existed, and that both parties have performed pursuant that agreement. Defendant first contends that the absence of a signed agreement does not

4

prevent the enforcement of an agreement. Defendant asserts that by performing their respective obligations under the agreement, the parties have demonstrated acceptance of the validity of their negotiated agreement. Second, Defendant contends that the actual settlement agreement of the parties, as reflected by the correspondence exchanged between the parties, did not contain a date that the settlement was due. Therefore, payment was only due within a "reasonable time." Third, the Defendant argues that none of the correspondence between the parties contained a "time is of essence clause." Thus, even if October 20, 1997 was the agreed date that payment was due, delivering a payment one week late did not obviate the agreement, as the parties substantially performed within a reasonable time of that date.

Plaintiff responds that the parties had agreed to an October 20, 1997 deadline for payment, that the Defendant did not pay by that date, and as a consequence, any settlement agreement was voided by Defendant's failure to timely pay. Plaintiff contends that this was the essence of the October 21, 1997 telephone conversation between counsel for both parties. Plaintiff avers that because the Plaintiff is a judgment creditor, he can choose to execute on that judgment in whole or in part at his discretion. Accordingly, under this argument, the fact that Plaintiff accepted partial payment three years ago, returned Defendant's property, and waited until the winter of 2000 to seek the remainder of the judgment did not extinguish his right to enforce the unpaid balance of such judgment, with interest.

As an initial matter, the Defendant concludes correctly that an unsigned settlement agreement does not prevent the enforcement of such agreement. It is well settled that a party to litigation can be bound by a settlement agreement reached orally, even though that party never signs a document reflecting that agreement. "In order to determine whether the parties intended to be bound by the

5

settlement prior to the execution of the written documents, a court must consider the course of negotiations, agreement on material terms, whether the parties described the settlement as such, and whether any existing disagreements were merely technicalities." Caleshu v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 737 F.Supp. 1070, 1086 (E.D.Mo.,1990). The Court will consider these factors to determine if an agreement existed between the parties. If the parties entered into an oral agreement regarding the material terms of settlement, this Court has the inherent power to enforce that settlement, regardless of whether any formal document was signed.

  The Court finds that the evidence in the record demonstrates that a settlement agreement was reached by the parties. The correspondence between the parties demonstrates that the Plaintiff and Defendant had reached an agreement on material terms: that the Defendant would pay a $220,607.86 settlement sum, would release the Plaintiff from any claims arising from the seizure of the firearms valued at $350,000, and in exchange, Plaintiff would return the seized firearms and release and discharge the Defendant from any claims arising from this lawsuit. The correspondence between counsel refers to this agreement as a settlement agreement. Also, the negotiations between the attorneys was extensive. Drafts were exchanged without major disagreements or attempts to gain significant concessions or changes in terms. The drafts reflect that while the parties were engaged in a "fine-tuning" process, both sides had reached a basic agreement. All of the material terms were addressed. There was no material issue that was not covered in the negotiations. Clearly, counsel referred to the document as a settlement agreement. The only remaining dispute is the few days that elapsed before the settlement check was delivered. Accordingly, the Court holds that a settlement agreement with the above-listed terms existed in this case.

This Court must next determine if a October 20, 1997 deadline was agreed to by the parties, and whether this deadline was a dispositive term to the settlement agreement. Indeed, there is ample evidence from which a conclusion can be reached that this deadline was a term of the agreement between the parties. The October 6, 1997 letter reflecting that an agreement had been reached in principle explicitly references October 20, 1997 as a deadline. Additionally, in his October 16, 1997 letter accepting the terms of Plaintiff's October 15, 1997 settlement draft, Defendant's counsel stated that "I understand and anticipate that our clients will deliver the check in the agreed amount by Monday." The exact date of the Monday referenced in this letter would have been October 20, 1997. In addition, Plaintiff also contends that during their October 21, 1997 telephone conversation, counsel for Defendant admitted that such a deadline had been broken. With this evidence in mind, the Court holds that the October 20, 1997 deadline was a term of the settlement agreement between these parties. Thus, the Court must decide whether the Defendant's late payment of the agreed settlement sum voided the settlement agreement between the parties. Three factors weigh heavily against such a conclusion.

First, under general contract principles, the performance by both parties demonstrates that both parties have accepted the agreement, regardless of Defendant's late payment. "Although a written document is not signed, when one party accepts other party's performance, it gives validity to the instrument and imposes on the acceptor obligations provided by the agreement." HDH Development and Realty Corp. Inc. v. Smith, 717 S.W.2d 274, 277 (Mo.App. E.D. 1986). A party "cannot stand by and accept [another party's] performance and then later escape any obligation." Id. Viewing the facts before the Court, it appears that both parties have substantially performed pursuant to the settlement agreement. The Defendants tendered the agreed sum of $220,607.86. It is

undisputed that the Plaintiff cashed the settlement check soon after its receipt. Furthermore, the Plaintiff returned the $350,000 worth of firearms that had been previously confiscated, as required by the agreement between the parties. Therefore, the facts demonstrate that both parties have substantially performed pursuant to the settlement agreement.

The Plaintiff raises the October 21, 1997 telephone conversation between counsel as evidence that the parties voided the contract after the Defendant did not pay on October 20, 1997. During this conversation, counsel for Plaintiff recorded this conversation, and has subsequently provided the Court with a transcript of this conversation. From this transcript it is clear that counsel for both parties were uncertain whether the settlement agreement was still in place. In that conversation, counsel for Plaintiff indicated that "if we can get the check for the full amount by Friday, I'll be happy." (Transcript from Recorded Phone Conversation). However, counsel for Plaintiff also indicated that Defendant's failure to meet the October, 20 deadline had made Chronister "pretty intense," and that while it was counsel's suggestion that the Defendant "continue to try and make arrangements to give me the money by the end of the week," he would have to "talk to Chronister today and see what he wants to do about it." (Id.)

Thus, it is apparent from this conversation that while counsel was willing to continue to comply with the terms of the settlement agreement, he could not make a definitive decision on this matter until he received authority from his client. However, the fact remains that after this conversation, the parties substantially performed in accordance with the terms of the settlement agreement. Again, the settlement sum was provided to the Plaintiff, and the Plaintiff subsequently returned the seized firearms. Therefore, the fact that counsel for Plaintiff was unsure on October 21, 1997, whether his client would be inclined to adhere to the settlement agreement does not diminish

8

the fact that the parties have engaged in substantial performance that mirrors the terms of the settlement agreement.

Second, since almost three years have passed before the Plaintiff initiated his current discovery, Plaintiff's inaction is a factor that also militates towards enforcement of the settlement agreement. If the Plaintiff truly considered the settlement agreement voided, he has inexplicably waited three years before attempting to recover the remainder of his judgment. The fact that Plaintiff has waited this long to recover the remainder of the judgment, coupled with the above-described evidence of performance, provides additional evidence to suggest that the parties considered a settlement agreement to be in effect.

Third, Plaintiff has not provided any evidence that a "time is of essence" clause was included in or discussed during any settlement negotiations or agreement. Where a contract "does not expressly provide that time is of essence, courts look to the language and purpose of a contract and to all surrounding circumstances to determine whether parties intended that time be of essence." Johnson v. Gregg, 807 S.W.2d 680 (Mo.App. S.D. 1991). Other than alleging the existence of the October 20 deadline, the Plaintiff has not presented any other evidence that the parties intended that time be of the essence. Furthermore, "[w]here a contract expressly provides that time is of the essence, so that performance on time is made a condition of the obligor's reciprocal rights under the contract, the parties may waive that provision by their conduct." ArtCraft Cabinet, Inc. v. Watajo, Inc., 540 S.W.2d 918, 926 (Mo.App. 1976). The Court agrees with the Defendant, that even if the parties understood time to be of the essence at the time of settlement negotiation, the Plaintiff has waived that understanding by his conduct, i.e., acceptance of Defendant's settlement check, return of confiscated property, and not attempting to recover the remainder of his judgment until three years

after cashing the $ 220,607.86 settlement check. The Court finds that even though October 20, 1997 was the agreed date that payment was due, Defendant's payment one week late did not obviate the agreement, as the parties substantially performed within a reasonable time of that date.

In conclusion, the parties' substantial performance under the settlement agreement, the lengthy delay by Plaintiff in seeking to recover the remainder of his judgment, and the lack of any evidence that time was of the essence convince the Court that the Defendant's motion to enforce settlement agreement should be granted.

Accordingly,

**IT IS HEREBY ORDERED** that the Defendant's Motion to Enforce Settlement Agreement is **GRANTED**.

So ordered this 6th day of March, 2001.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT COURT

10

UNITED STATES DISTRICT COURT EASTERN MISSOURI
INTERNAL RECORD KEEPING

AN ORDER, JUDGMENT OR ENDORSEMENT WAS SCANNED, FAXED AND/OR MAILED TO THE FOLLOWING INDIVIDUALS ON 03/06/01 by gbeckeme
                4:94cv2082    Chronister vs Bryco Arms

28:1332 Diversity-Product Liability

```
John Hilton    -  3402           Fax: 314-726-5518
William Kopis  -  19615          Fax: 618-277-1144
Mark McCloskey -  12925          Fax: 314-721-3664
```

SCANNED & FAXED BY:

MAR X 6 2001

**MJM**